IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:14-cv-714-RJC-DSC

| | |
|---|---|
| SIRONA DENTAL, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| JOHN SMITHSON and MARIA SMITHSON ) | |
| ) | |
| Defendants. ) | |
| ) | |

**THIS MATTER** is before the court on Plaintiff's Motion for Preliminary Injunction (Doc. No. 3), supporting memorandum, exhibits, and supplemental authority (Doc. No. 14), and Defendants' Reply and supporting memorandum and exhibits (Doc. No. 13). This matter is now ripe for review.

### I.   BACKGROUND

Plaintiff Sirona is purportedly one of the world's largest dental equipment manufacturer. Sirona develops, manufactures, and markets a complete line of dental products, including three-dimensional ("3D") imaging systems and CAD/CAM (computer-aided design/computer-aided manufacture) restoration systems. (Doc. No. 3-1 at 2). Sirona also maintains several websites devoted to its 3D technology, including Sirona3D.com, 3DSummit.com, Sirona3DDrive.com, and GetYour3dOn.com. (Id.)

Defendant John Smithson is the former Director of Marketing Extraoral Imaging for Sirona. (Id. at 3). Mr. Smithson entered into an Employee Patent and Secrecy Agreement ("Agreement") with Sirona, which Sirona alleges was signed on January 28, 2003.[1] By signing

---

[1] Defendant John Smithson contends he signed the agreement in 2006.

1

the Agreement Mr. Smithson, among other things, agreed that all intellectual property or other work relating to Sirona that he created during his employment belonged to Sirona. (Id. at 4). The Agreement also required Mr. Smithson to keep all such information confidential and not to disclose or use it at any time, even after his employment, exception upon written consent of the company. (Id.)

Sirona alleges that in September 2014, it terminated Mr. Smithson for violating the company's Code of Business Conduct after discovering he had defrauded Sirona by establishing a vendor relationship with his wife, Ms. Smithson, without Sirona's knowledge or consent, and approved invoices for her services. (Id. at 4-5). After his termination Plaintiff alleges that Mr. Smithson copied and deleted all data from his company-issued laptop and refused to relinquish his control over Sirona's websites. (Id. at 5). Plaintiff further asserts that Mr. Smithson may publicly disclose confidential and proprietary information belonging to Sirona. (Id. at 8)

On December 22, 2014, Plaintiff's filed a Motion for a Temporary Restraining Order and Motion for Preliminary Injunction against Mr. Smithson, requiring him to relinquish to Plaintiff his control over the websites and enjoining him from publicly disclosing Plaintiff's confidential and proprietary information. (Doc. No. 3). This court granted the TRO on December 24, 2014 and held a hearing on January 6, 2015. (Doc. No. 8).

**II.     DISCUSSION**

A preliminary injunction is an extraordinary remedy, the primary function of which is to protect the status quo and to prevent irreparable harm during the pendency of a lawsuit. In re Microsoft Corp. Antitrust Litigation, 333 F.3d 517, 525 (4th Cir. 2003). In each case, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding such request." Amoco Production Co. v. Gambell, 480 U.S. 531, 542

(2008). A plaintiff seeking a preliminary injunction must give notice to the opposing party under Federal Rule of Civil Procedure 65 and, at the hearing, must establish the following: (1) plaintiff is likely to succeed on the merits; (2) plaintiff is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of the equities tips in plaintiff's favor; and (4) an injunction is in the public interest. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 129 S.Ct. 365, 374 (2008).

The most recent test was adopted by the Court of Appeals for the Fourth Circuit in The Real Truth About Obama, Inc. v. Fed. Election Comm'n, 575 F.3d 342, 346–47 (4th Cir. 2009), *vacated on other grounds*, 130 S.Ct. 2371, 176 L.Ed.2d 764 (2010) (memorandum opinion), *reissued in pertinent part*, 607 F.3d 355 (4th Cir.2010), *overruling* Blackwelder Furniture Co. v. Selig Mfg. Co., 550 F.2d 189 (4th Cir.1977) (providing a four-pronged balance of the hardships test). The Winter Court emphasized that a plaintiff must demonstrate more than just a "possibility" of irreparable harm and a strong showing of likelihood of success on the merits. Winter, 129 S.Ct. at 375.

   A. Likelihood of Success on the Merits

This Court finds that Plaintiff is likely to prevail on the merits of its claim. The issue here is whether the Patent and Secrecy Agreement was enforceable. In North Carolina, for a covenant to be valid it must be "(1) in writing, (2) part of the contract of employment or sale of the business, (3) based on valuable consideration, (4) reasonable both as to time and territory, and (5) not against public policy." United States Laboratories, Inc. v. Kuykendall, 332 N.C. 643, 649, 370 S.E.2d 375, 380 (1988). A restrictive covenant generally has to be in writing at the inception of employment, unless new consideration is tendered by the employer in the restrictive covenant agreement. See Worth Chemical Corporation v. Freeman, 261 N.C. 780, 781, 136 S.E.

2d 118, 119 (1964). "An agreement is not in restraint of trade…if it does not seek to prevent a party from engaging in a similar business in competition with the promisee, but instead seeks to prevent the disclosure or use of confidential information." Chemimentals Processing, Inc. v. McEneny, 124 N.C. App. 194, 197 (1996). There must be new and additional consideration for non-compete agreements to be valid if signed after employment has commenced. See Worth Chemical Corporation v. Freeman, 261 N.C. 780 (1964). However, new and additional consideration is not required for agreements that do not restrain trade. See Robinson v. Ladd Furniture, 955 F.2d 1064 (4th Cir. 1993). In Robinson, the Fourth Circuit held that "continuance of an employment relationship is sufficient consideration for an employment agreement in North Carolina to be enforceable." 995 F.2d 1064 (4th Cir. 1993).

Here, Defendants assert that if the Agreement was executed on January 28, 2003, there was not adequate consideration for the Agreement to be valid. Defendants allege that Mr. Smithson began work on or about January 19, 2003, which was days before he signed the Agreement. (Doc. No. 13 at 2). Even if Plaintiff is correct that the Agreement was executed on January 28, 2003 instead of January 28, 2006, Defendants argue that the Agreement was not supported by adequate consideration because Mr. Smithson had already begun an employment relationship with Sirona. (Id. at 2-3). Therefore, since there was no new and additional consideration, Defendants contend that the Agreement was void. (Id.). This Court disagrees with Defendants arguments.

The Agreement between Plaintiff and Defendant does not restrain trade, but rather seeks to prevent disclosure or use of confidential information; therefore, new and additional consideration is not required. Although Defendants allege that Mr. Smithson began work prior to signing the Agreement, it is undisputed that after signing the Agreement he continued to work

for Sirona until his termination in September 2014. The continuance of his employment relationship with Sirona is sufficient consideration for an employment agreement in North Carolina to be enforceable. See Robinson, 995 F.2d at 1064 (4th Cir. 1993). Thus, this Court finds this factor weighs in favor of preliminary injunction.

B. Irreparable Harm

This Court finds that Plaintiff has shown that immediate and irreparable injury, loss or damage will result before the adverse party can be heard in opposition. While the 3DSummit.com website is down, customers and potential customers are unable to obtain information and register for dental education events scheduled in early 2015 while Defendant controls company websites. (Doc. No. 3-3 at 5-6). This not only reduces Sirona's revenue from registration fees but also reduces Sirona's potential sales at its upcoming 3D Summits. Sirona will also suffer irreparable harm if Mr. Smithson publicly discloses confidential and proprietary information to Sirona's competitors. This Court finds that this factor weighs heavily in favor of preliminary injunctive relief.

C. Balance of Equities

The Court finds that the balance of equities tips in the favor of Plaintiff Sirona. If injunctive relief was denied, Plaintiff will likely suffer irreparable harm. Granting the motion will prevent Mr. Smithson from controlling the websites and prohibit him from disclosing Sirona's confidential information until the case has been decided on its merits. The former harm appears to be irreparable, while the latter harm is compensable in that Defendants can be reimbursed if Plaintiff fails to prevail in this action. The Court finds this factor weighs in favor of preliminary injunctive relief.

D. Public Interest

Finally, this Court finds that the public interest is furthered by the granting of a preliminary injunction. The public has an interest in being able to access Sirona's websites. Customers and potential customers should have access to information about Sirona's products and seminars. In regards to Sirona's confidential information, the public has no legitimate interest in discovering Sirona's confidential and proprietary information.

Having carefully considered all four factors, the court finds that the entry of a preliminary injunction is necessary to protect Plaintiff from ongoing and irreparable harm during the pendency of this action. Such harm to Plaintiff significantly outweighs any harm that Defendants may incur as a result of the entry of the injunction.

E. Bond

The Federal Rules of Civil Procedure state that "[n]o ... preliminary injunction shall issue except upon the giving of security by the applicant, in such sum the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." Fed.R.Civ.P. 65(c). The amount of bond is within the discretion of the Court. Maryland Dept. of Human Resources v. U.S. Dept. of Agriculture, 976 F.2d 1462, 1483 (4th Cir. 1992). This Court finds that a bond of $100,000.00, is sufficient to cover Defendants' costs or damages should it later be determined that Defendant was wrongfully enjoined.

III. CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Preliminary Injunction (Doc. No. 3) is hereby **GRANTED**:

1. Defendant John Smithson is hereby ordered to immediately take all steps reasonably necessary to relinquish to Sirona his control over 3DSummit.com,

Sirona3DDrive.com, GetYour3dOn.com, and any other Sirona-related websites or domains under his control, such that Sirona can immediately resume control and operation of these websites and domains;

2. Defendant Smithson is hereby ordered not to further control, access, or alter 3DSummit.com, Sirona3DDrive.com, GetYour3dOn.com, or any other Sirona-related websites or domains under his control.

3. Defendant Smithson is hereby ordered not to publicly disclose Sirona's confidential and proprietary information, including but not limited to disclosure of such information by way of a publicly-filed pleading that includes allegations pertaining to Sirona. Such confidential information that is prohibited from public disclosure includes but is not limited to Sirona's confidential marketing and sales information; Sirona's accounting and financial information; information regarding Sirona's business processes; confidential information regarding Sirona's products; and information regarding the inventory levels of Sirona's exclusive distributor, Patterson Dental Supply, Inc. This Order shall not prevent Defendant from filing such information under seal and/or seeking relief from non-disclosure in conjunction with court proceedings; and

4. Plaintiff is hereby ordered to secure a bond in the face amount of $100,000.00 to cover Defendants' costs or damages should it later be determined that Defendants were wrongly enjoined.

Signed: January 20, 2015

_____
Robert J. Conrad, Jr.
United States District Judge