UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:14-cv-00714-RJC-DSC

| SIRONA DENTAL, INC., | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) |
| MARIA SMITHSON and JOHN SMITHSON, | ) ORDER |
| Defendants, | ) |
| v. | ) |
| MICHAEL S. AUGINS, | ) |
| Third-Party Defendant. | ) |

**THIS MATTER** comes before the Court on Plaintiff's ("Sirona Dental") Motion to Dismiss Amended Counterclaims and Memorandum in Support, (Doc. No. 43); Third-Party Defendant's ("Augins") Motion to Dismiss and Memorandum in Support (Doc. Nos. 45, 46); Defendants' ("the Smithsons") Memorandum in Opposition, (Doc No. 48); the Magistrate Judge's Memorandum and Recommendation ("M&R"), (Doc. No. 51); the Smithsons' Objections to the M&R and Response to Objections, (Doc. Nos. 53, 56); Sirona Dental's Response to Objections, (Doc No. 54); and Augins's Objections to the M&R and Response to Objections, (Doc. Nos. 52, 55). The issues are ripe for adjudication.

I. **BACKGROUND**

Neither party has objected to the Magistrate Judge's statement of the factual and procedural background of this case; therefore, the Court adopts the facts as set forth in the M&R. The Magistrate Judge recommended that Sirona Dental's Motion to Dismiss Amended

Counterclaims, (Doc. No. 43), be granted, and Augins's Motion to Dismiss, (Doc. No. 46), be granted in part and denied in part. Specifically, the M&R recommended Augins's Motion be denied as to the Smithsons' tortious interference with contract claim. (Doc. No. 51 at 5–7). Augins objects to this recommendation. (Doc. No. 52). The Smithsons object to the Magistrate Judge's recommendation to dismiss their slander claims. (Doc. No. 53). These objections are considered below.

## II. STANDARD OF REVIEW

A district court may assign dispositive pretrial matters, including motions to dismiss, to a magistrate judge for "proposed findings of fact and recommendations." 28 U.S.C. § 636(b)(1)(A) & (B). The Federal Magistrate Act provides that a district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. at § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3). However, "when objections to strictly legal issues are raised and no factual issues are challenged, de novo review of the record may be dispensed with." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). Similarly, when no objection is filed, "a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72, advisory committee note).

The standard of review for a motion to dismiss is well known and well-stated in the M&R. It tests the legal sufficiency of a complaint but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face."

Ashcroft v. Iqbal, 556 U.S. 662, 697 (2009). Facial plausibility means allegations that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Furthermore, a court "must accept as true all of the factual allegations contained in the complaint" when ruling on a motion to dismiss. Id. at 94. However, a court is not required "to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). Finally, a court must "view the complaint in the light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).

### III. DISCUSSION

#### A. The Smithsons' slander claims against Sirona Dental and Augins

The Smithsons object to the Magistrate Judge's recommendation to dismiss the slander per se and slander per quo claims against Sirona Dental and Augins. (Doc. No. 53 at 4–7). Specifically, the Smithsons allege that Sirora Dental's purported statements, by and through Augins, to employees of Sirona Dental's parent company, Sirona Dental Systems, Inc. ("SDS"), amount to publication under both slander claims. (Id.).

In relevant part, the Smithsons' complaint alleges that Augins reported to Jeff Slovin, an SDS executive, that Defendant John Smithson "had been secretly employing" Defendant Maria

3

Smithson "for years" through a third party contractor, that "neither [Augins himself] nor anyone else at [Sirona Dental] had any knowledge" of the employment relationship, and that he never approved of any such employment relationship. (Doc. 41: "Complaint" ¶ 36). Additionally, the Smithsons allege that Augins made an identical statement to Susan Murphy and Lynn Blankenship, two other SDS executives, as well as to Mike Williamson, a Sirona Dental executive. (Complaint ¶ 38). The complaint further alleges that these statements were made either during or at the commencement of an investigation that led to the suspension and firing of the Smithsons. (Id. ¶¶ 38–39). The Smithsons also allege that Augins communicated to these same actors that Defendant John Smithson was "an untrustworthy employee, a fraudulent supervisor of employees, a thief of company resources," and that Defendant John Smithson had "embezzled or misused funds." (Id. ¶ 56). Moreover, the Smithsons allege that these statements were made with malice because Augins knew his statements to be false. (Id. ¶¶ 22–25, 29–30, 75). Further, the Smithsons allege that the statements were motivated by Augins's "personal feelings of ill-will towards [the Smithsons] as a result of his divorce and in an attempt to prevent [Defendant John Smithson] from disclosing potentially devastating financial information regarding SDI" that occurred under Augins's supervision. (Id. ¶¶ 35, 76-77).

To prevail on a claim for slander per se or slander per quo, a plaintiff must establish "that the defendant caused injury to the plaintiff by making false, defamatory statements of or concerning the plaintiff, which were published to a third person." Boyce & Isley v. Cooper, 153 N.C. App. 25, 29 (2002). Under North Carolina law, intra-office communications may be published when the receiving party remains "'distinct and independent of the process by which

the [statements were] produced.'"[1] See Satterfield v. McLellan Stores Co., 215 N.C. 582, 2 S.E.2d 709, 711 (1939) (quoting Owen v. Ogilvie Pub. Co., 32 App. Div. 465, 53 N.Y.S. 1033 (App. Div. 1898)). In Satterfield, a manager's note to a stenographer that provided instructions for completing a termination letter did not amount to publication because the manager's instruction and the stenographer's recording of the answer were "both parts of one act." Satterfield, 215 N.C. at 711. The Satterfield court relied on a New York case, Ogilvie, with a near identical fact pattern in reaching its decision. White v. Trew, 217 N.C. App. 574, 581 (2011), rev'd on other grounds (citing Satterfield, 215 N.C. at 711).

In Ogilvie, the New York court found that "where the manager of a corporation, in connection with its business, dictated a libelous letter to a stenographer in the corporation's employment, who copied and mailed the same to [the] plaintiff, the dictation, copying, and mailing constituted but a single act of the corporation, and did not amount to a publication of the letter." Satterfield, 215 N.C. at 711 (citing Ogilvie Publishing Co., 32 App. Div. 465). Although the New York court found no publication occurred under those facts, the court envisioned a scenario of:

> publication of a libel by a corporation [from] reading the libelous matter to a servant of such [a] corporation, or delivering it to be read. Where the duties devolved upon such servant are distinct and independent of the process by which the libel was produced, he might well stand in the attitude of a third person through whom a libel can be published. But such rule may not be applied where

---

[1] The Court recognizes that district judges in the Western and Eastern Districts of North Carolina have held that intra-company statements are not "published" under North Carolina law. See Reikowski v. Int'l Innovation Co. USA, Inc., 2013 WL 526489, *3 (W.D.N.C. 2013) (Mullen, J); and Lee v. AT&T Mobility Services LLC, 2013 WL 1246747 (E.D.N.C. 2013) (Flanagan, J). But the contrary conclusion reached herein seems faithful to the reasoning of Satterfield. See e.g. Prins v Holland North America Mortgage Co., 107 Wash. 206 (1919) (cited in Satterfield, 215 N.C. at 711) (Publication found where main office sent communication to branch office read by co-manager of defendant and by bookkeeper).

the acts of the servants are so intimately related to each other as disclosed in the present record, and the production is the joint act of both.

Id. (emphasis added).

More recently, the North Carolina Court of Appeals relied on the reasoning of Satterfield, and Satterfield's interpretation of Ogilvie, to find that slanderous, intra-office communications could be published. See Trew, 217 N.C. App. at 580–81. Specifically, the court rejected the defendant's argument that Satterfield "should be read to say that employees of the same employer can never be third persons to statements made by other employees." Id. at 581. In contrast, Satterfield provides that "intra-office communications can be published in terms of defamation if the individual who reads the communications is independent of the process by which the communications were produced." Id. As for the facts, the defendant, an engineering department head at North Carolina State University ("NCSU"), produced an annual review of the plaintiff's work that contained allegedly slanderous content. Id. The court found that the defendant published the slanderous material by forwarding the review to NCSU's dean and in-house counsel because the defendant "did not use [their] services . . . in drafting the review." Id. Instead, the dean and the in-house counsel "only became involved after the review had been finished . . . ." Id. Therefore, publication occurred because "they were 'distinct and independent of the process by which the statements were produced.'" Id. (quoting Satterfield, 215 N.C. at 711).[2] Similarly, in Shreve v. Duke Power Co., a plaintiff's slander claim against his supervisor for statements made to other management personnel was deemed sufficient publication to go to a jury. 97 N.C. App. 648, 650 (1990).

---

[2] On appeal, the North Carolina Supreme Court reversed Trew on grounds of sovereign immunity because the public university department head maintained the records in question as required by North Carolina law. Trew, 366 N.C. at 360–66.

Here, the Smithsons have sufficiently alleged that communications from Augins, Sirona Dental's President, to SDI and Sirona Dental executives were published because these executives were "distinct and independent of the process by which the statements were produced." Satterfield, 215 N.C. at 711. The complaint does not allege that Augins merely dictated the slanderous statements to a secretary or stenographer. (Complaint ¶¶ 36–37). Rather, the complaint alleges that the slanderous statements originated with Augins and that an investigation was instituted only after Augins "published" the statements to four other executives. (Id. ¶¶ 38–39). Augins did not use these four executives' services in formulating the allegedly slanderous communications. Trew, 217 N.C. App. at 581. Therefore, the Court finds the reasoning of Satterfield controlling and, in turn, holds that the Smithsons sufficiently alleged publication of slanderous communications.

In light of this finding that the complaint sufficiently alleges publication, the Court now considers whether Sirona Dental's and Augins's allegedly slanderous statements were privileged. A slanderous statement is qualifiedly privileged when made:

> (1) in good faith, (2) on subject matter (a) in which the declarant has an interest or (b) in reference to which the declarant has a right or duty, (3) to a person having a corresponding interest, right, or duty, (4) on a privileged occasion, and (5) in a manner and under circumstances fairly warranted by the occasion and duty, right or interest.

Barker v. Kimberly-Clark Corp., 136 N.C. App. 455, 460 (2000) (internal citation and quotations omitted). "The existence of the privilege creates a presumption that the communication was made in good faith and without malice." Barker, 136 N.C. App. at 460. In the employment context, North Carolina courts "have held that allegations made during the course of investigations are privileged." Troxler v. Charter mandala Ctr., Inc., 89 N.C. App. 268, 273

(1988). A plaintiff may rebut the presumption of privilege by showing that "the statement was made with actual malice." Id. Actual malice may be proved by showing:

> evidence of ill-will or personal hostility on the part of the defendant or by showing that the declarant published the defamatory statement with knowledge that it was false, with reckless disregard for the truth or with a high degree of awareness of its probably falsity.

Id. at 461 (internal citations and quotation omitted). In Baker, allegations of "anger, hostility, and ill-will" by a defendant-manager towards a plaintiff-employee evidenced actual malice when the plaintiff alleged that defendant placed her on his "hit-list" and sought to fire her. Id.

Here, a presumption of privilege applies because the allegedly slanderous communications occurred during an employment investigation. Troxler, 89 N.C. App. at 273. However, the Smithsons' complaint sufficiently alleges actual malice to rebut the presumption that Sirona's and Augins's communications were made in good faith and without malice. Specifically, the Smithsons sufficiently allege actual malice with their contention that Augins communicated to the SDI and Sirona executives, while knowing the communication to be false, that Defendant John Smithson "secretly employed" his wife without Augins's knowledge. Barker, 136 N.C. App. at 461. Additionally, the Smithsons sufficiently allege actual malice with their contention that Augins' slanderous statements were motivated by "ill-will" over the Smithsons' continued relationship with his estranged wife. Id. Therefore, the Court finds that the Smithsons sufficiently allege that the slanderous statements were published and made with actual malice, thus overcoming a presumption that the statements were privileged. Thus, Sirona Dental's and Augins's motions to dismiss the slander per se and slander per quod claims are denied.

B. The Smithsons' tortious interference with contract claim against Augins

Augins objects to the Magistrate Judge's recommendation that the Smithsons sufficiently alleged a tortious interference with contract claim. (Doc. No. 52 at 4). Specifically, Augins contends that the tortious interference claim should be dismissed because Sirona Dental's employee handbook provides a legitimate basis for the termination of the Smithsons' contracts. (Id. at 5).

Under North Carolina law, tortious interference with contract requires a plaintiff to prove: (1) a valid contract between the plaintiff and a third person conferring upon the plaintiff a contractual right against the third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; and (4) in doing so acts without justification; (5) resulting in actual damage to the plaintiff. White v. Cross Sales & Eng'g Co., 177 N.C. App. 765, 768 (2006). In the employment context, a "non-outsider" to an employment relationship is liable when a plaintiff proves that the "defendant acted with legal malice, that he [performed] a wrongful act or exceed[ed] his legal right or authority in order to prevent the continuation of the contract between the parties." Bloch v. Paul Revere Life Insurance Co., 143 N.C. App. 228, 240 (2001). In Bloch, the defendant's non-outsider status did not insulate him from liability because he interfered in the "absence of a reasonable, good faith motive." See id. at 241 (plaintiff's claim surviving summary judgment review because it alleged non-outsider interference with the plaintiff's contract to prevent disclosure of the defendant's misuse of corporate funds).

Here, taking the facts alleged in the light most favorable to the Smithsons, the Smithsons' Amended Complaint sufficiently alleges that Augins acted with legal malice when making false statements concerning the Smithsons to induce Sirona Dental to terminate their employment contracts. First, the Court finds Augins's argument relying on Sirona Dental's employee

9

handbook unpersuasive at this stage of review. (Doc. No. 52 at 6). Although Augins attached an alleged employee handbook to his Memorandum, the Smithsons did not attach this handbook to their Memorandum or Amended Complaint. See Norman v. Tradewinds Airlines, Inc., 286 F. Supp. 2d 575, 579–80 (M.D.N.C. 2003) (finding that documents unattached to the plaintiff's complaint could be considered at the 12(b)(6) stage because the plaintiff attached the documents to his response and made "additional substantial factual allegations" that were not included in his complaint). Moreover, the Smithsons contest the authenticity of the employee handbook. (Doc. No. 41 at 15); see Lapidus v. Hecht, 232 F.3d 679 (9th Cir. 2000) (finding that a court may only "consider [unattached] 'documents . . . whose authenticity no party questions . . .'" at the 12(b)(6) stage). Second, the Smithsons sufficiently allege motives based on legal malice—preventing disclosure of financial information potentially devastating to Augins's career and personal angst—that exceed Augins's legal right or authority as a non-outsider. Bloch, 143 N.C. App. at 240. Therefore, Augins's objection is overruled, and the Court adopts the Magistrate Judge's recommendation.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that Sirona Dental's Motion to Dismiss Amended Counterclaims, (Doc. No. 43), is **GRANTED in part** as to the Smithsons' claims for negligent misrepresentation, unfair and deceptive trade practices, and trespass to chattels,[3] and **DENIED in part** as to the Smithsons' claims for slander per se and slander per quod; and that Augins's

---

[3] The Court adopts the Magistrate Judge's recommendation to dismiss the Smithsons' claims for negligent misrepresentation, unfair and deceptive trade practices, and trespass to chattels, to which the Smithsons did not object, after finding no clear error on the face of the record. Diamond, 416 F.3d at 315 (4th Cir. 2005).

Motion to Dismiss, (Doc. No. 46), is **GRANTED in part** as to the Smithsons' claims for negligent misrepresentation, unfair and deceptive trade practices, and trespass to chattels, and **DENIED in part** as to the Smithsons' claim for slander per se, slander per quod, and tortious interference with contract.

Signed: March 31, 2016

Robert J. Conrad, Jr.
United States District Judge

11