UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:14-cv-00714-RJC-DSC

SIRONA DENTAL, INC.,

 Plaintiff, Counter Defendant

    v.

MARIA SMITHSON and JOHN
SMITHSON,

 Defendants, Third-Party  Plaintiffs,
   Counter Claimants

    v.

MICHAEL S. AUGINS,

  Third-Party Defendant.

          ORDER

**THIS MATTER** comes before the Court on motions of Sirona Dental, Inc.,

(Doc. No. 70), Michael Augins, (Doc. No. 73), and Maria & John Smithson, (Doc. No.

76), for summary judgment, along with related responses and replies.  Having

considered the evidence presented after discovery and heard the arguments of the

parties, the Court will grant the motions of Sirona Dental, Inc. and Michael Augins,

and deny the motion of Maria & John Smithson, except as to Count Eighteen

relating to misappropriation of trade secrets.

I.  BACKGROUND

  This case arises out of John Smithson's employment of his wife, Maria

Smithson, as an outside vendor for Sirona Dental, Inc. (SDI). SDI, a subsidiary of

Sirona Dental Systems, Inc. (SDS), develops, manufactures, and markets 3D imaging technology dental products. John Smithson was employed as SDI's Director of Marketing Extra-Oral Imaging from January 2003 until September 2014.

His responsibilities included coordinating with the vendors who set up various websites SDI maintains as part of its business. He executed an Employee Patent and Secrecy Agreement, agreeing that all intellectual property or other work relating to SDI that he created during his employment belonged to the company. Although SDI paid for website buildout and development, John Smithson paid for the registration of the 3DSummit.com domain, using his own name and personal email address. He gave log-in and password information to employees under him to work on that website used for dentists to register to attend informational seminars put on by SDI called "3D Summits."

SDI's Employee Handbook contains a Code of Business Conduct instructing employees to "avoid conflicts of interest between personal and Sirona Group relationships." In 2009, John Smithson told Dr. Tarun Agrawal, a compensated regular presenter at 3D Summits, that he was going to have his wife, Maria Smithson, perform marketing services for an SDI event under a fake name because they did not want questions or "any fuss" about the arrangement, which would "look bad" to SDI and vendors. John Smithson asked Dr. Agarwal to allow Maria Smithson to use the bank account of Townie Meeting d/b/a Practical Dental Learning Systems (PDL), which Dr. Agarwal founded and was an SDI preferred vendor, as a pass-through to conceal her identity from SDI. Dr. Agarwal agreed

although Maria Smithson was not an actual contractor or employee of PDL.

After SDI President Michael Augins approved a marketing services contract between SDI and PDL, John Smithson assigned work to Maria Smithson under the pseudonym "Elizabeth Brown." John Smithson had authority to approve invoices up to a certain dollar amount. Invoices on PDL letterhead submitted by Maria Smithson via an Elizabeth Brown email account remained under that cap, although sometimes multiple invoices were submitted on the same day. Dr. Agawal did not prepare, review, or benefit from any of the invoices--all funds paid by SDI to PDL were subsequently transferred to Maria Smithson. Even after PDL ceased to exist as a company in 2014, Maria Smithson used Dr. Agarwal's dental practice account to receive money from SDI. SDI calculates the total amount of Maria Smithson-submitted invoices to be $349,500. She used her personal checking account to pay subcontractors who invoiced PDL for website and graphic design and other work assigned to Maria Smithson by John Smithson.

SDI human resources executives learned about the arrangement of John Smithson negotiating Maria Smithson's rates and approving her invoices when they were investigating another employee who worked under John Smithson. On Thursday, September 25, 2014, SDI suspended John Smithson's employment while it continued to investigate. The following Monday, SDI Human Resources Manager Kevin Mullinex was instructed to go to the Smithsons' house to retrieve John Smithson's company-issued laptop as soon as possible. Mullinex went that day to the Smithsons' residence, spoke with John Smithson, and requested that he turn

over the laptop. John Smithson kept the laptop, telling Mullinex that he was backing up the data. John Smithson returned the laptop the following day, which was also the day he received his termination letter; however, all data on the laptop was deleted. John Smithson later provided a backup drive to SDI on October 14, 2014.

On December 11, 2014, the 3Dsummit.com website was shut down, blocking customers from registering for SDI's events. John Smithson admitted changing the domain account password after he thought his personal email account had been hacked, which prevented SDI from regaining control of that website. On December 24, 2014, the Court ordered John Smithson to relinquish control of SDI websites. (Doc. No. 8: TRO at 2).

## II.     STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id. The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett,

477 U.S. 317, 323 (1986) (internal citations omitted). "The burden on the moving party may be discharged by 'showing' . . . an absence of evidence to support the nonmoving party's case." Id. at 325.

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert Cty., Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (internal citations omitted). The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. Anderson, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. Id. at 249-50.

III.  LEGAL DISCUSSION

A.  SDI's and Augins's Motions for Summary Judgment (Doc. Nos. 70, 73)

SDI seeks summary judgment on its declaratory judgment claim (Count

Eleven) against John Smithson.  SDI and Augins seek summary judgment on the Smithsons' slander per se (Count One) and slander per quod (Count Two) claims against them.  Augins also seeks summary judgment on the Smithsons' tortious interference claim (Count Three).

1.    Declaratory judgment claim (SDI's Count Eleven)

SDI seeks a judgment pursuant to 28 U.S.C. § 2201 declaring that 3Dsummit.com, Sirona3DDrive.com, and GetYour3dOn.com rightfully belong to SDI and John Smithson has no right to own, control, or access those domain accounts. (Doc. No. 22: Amend. Compl. at ¶ 167).  John Smithson asserts no ownership interest in the websites, (Doc. No. 76-1: Mem. at 22); therefore, summary judgment in favor of SDI on this claim will be granted.

2.    Slander per se claim (Smithsons' Count One)

The North Carolina Business Court has detailed a helpful summary of North Carolina defamation law:

> To recover for defamation, "a plaintiff must allege and prove that the defendant made false, defamatory statements of or concerning the plaintiff, which were published to a third person, causing injury to the plaintiff's reputation." Tyson v. L'eggs Prods., Inc., 84 N.C. App. 1, 10–11, 351 S.E.2d 834, 840 (1987). Slander per se is a particular kind of defamation defined as "an oral communication to a third party which amounts to (1) an accusation that the plaintiff committed a crime involving moral turpitude; (2) an allegation that impeaches the plaintiff in his trade, business, or profession; or (3) an imputation that the plaintiff has a loathsome disease." Phillips v. Winston–Salem/Forsyth Cnty. Bd. of Educ., 117 N.C. App. 274, 277, 450 S.E.2d 753, 756 (1994). When a statement falls into one of these three categories, "malice and damages are deemed presumed by proof of publication, with no further evidence required as to any resulting injury." Boyce & Isley v. Cooper, 153 N.C. App. 25, 30, 568 S.E.2d 893, 898 (2002).
>
> In order to be slanderous per se, defamatory words "must be susceptible of

but one meaning and of such a nature that the court can presume as a matter of law that they tend to disgrace and degrade the party or hold him up to public hatred, contempt or ridicule, or cause him to be shunned and avoided." Renwick v. News & Observer Pub. Co., 310 N.C. 312, 317–18, 312 S.E.2d 405, 409 (1984) (citation omitted). Constitutional limits on the regulation of speech dictate that defamatory statements are not actionable if they "cannot 'reasonably [be] interpreted as stating actual facts' about an individual[.]" Daniels v. Metro Magazine Holding Co., LLC, 179 N.C. App. 533, 539, 634 S.E.2d 586, 590 (2006) (quoting Milkovich v. Lorain Journal Co., 497 U.S. 1, 20 (1990)). Moreover, "to fall within the class of slander per se as concerns a person's trade or profession, the defamatory statement must do more than merely harm a person in [his] business." Market Am., Inc. v. Christman–Orth, 135 N.C. App. 143, 151, 520 S.E.2d 570, 577 (1999) (citations and quotation marks omitted). The false statement "(1) must touch the plaintiff in [his] special trade or occupation, and (2) must contain an imputation necessarily hurtful in its effect on [his] business." Id.

Hopkins v. MWR Management Co., 15 CVS 697, 2017 WL 2380227 (May 31, 2017).

a)      statements at issue

All the statements alleged by the Smithsons in their Amended Counterclaim and Amended Third Party Complaint as slander per se were purportedly made by SDI President Michael Augins between September 23-29, 2014 to Jeff Slovin, SDS Chief Executive Officer; Lynn Blankenship, Vice President of Human Resources & Services; Susan Murphy, Senior Vice President of Finance; and Michael Williamson, an SDI sales and marketing employee. (Doc. No. 41 at ¶¶ 46-55).  He allegedly told each of them that he had no knowledge that John Smithson was secretly employing his wife, Maria Smithson, as Elizabeth Brown, and, thus, John Smithson was embezzling or misusing SDI funds and was committing fraud against SDI.

SDI has distilled the following statements as being alleged by the Smithsons in discovery as actionable:

1.  Michael Augins told Sirona employees and executives that he did not

know about Maria Smithson's work for Sirona USA;

2. Prior to October 24, 2014, Michael Augins, Michael Williamson, Gary Berg, and Dean Pferschy described Maria Smithson's work for PDL as embezzlement when speaking to Sirona's sales force employees and Patterson Dental employees. The Smithsons learned about these statements from Javid Tokhi on October 14, 2014;

3. On October 29, 2014, Chris Goodson told Dr. Darin and CeCe O'Bryan that Maria Smithson's work was essentially embezzlement and that Maria Smithson billed for non-existent projects. The Smithsons learned about these statements from the O'Bryans;

4. At a 3D Summit in San Francisco in November 2014, Jochen Kusch overheard Mike Williamson stating that John was terminated for having a vendor relationship with his wife that the Smithsons had set up a fake company and the Smithsons were involved in a fraudulent scheme. The Smithsons learned about these statements from Kusch;

5. Mike Williamson and other Sirona sales and marketing employees provided false statements to individuals in the dental industry. The Smithsons learned about these statements from Tokhi on December 10, 2014;

6. On or before January 8, 2015, Pat Hess told Dr. John White (i) the Smithsons were embezzling, (ii) the reason John Smithson was terminated, (iii) John was a "really bad guy," and (iv) John Smithson was funneling money to his spouse. The Smithsons learned about these statements from Dr. White;

7.  During February 2015, Mike Williamson had conversations with Ivoclar representatives resulting in the termination of employment discussions relating to Mr. Smithson;

8.  On or before February 20, 2015, various Sirona sales employees were gossiping to Dr. Neal Patel about the reason John Smithson was fired. The Smithsons learned about these statements from Dr. Patel;

9.  On April 30, 2015, and May 2, 2015, at the CDA South Dental Convention, Mike Williamson told Brian Connolly that (i) Michael Augins was discussing the reason that John Smithson was terminated and (ii) John Smithson was engaged in fraudulent conduct. John Smithson learned about these statements from Connolly; and

10. In May 2015, Mike Williamson spoke with Brian Allen regarding John Smithson's departure from Sirona. (Doc. No. 71: Mem. at 4-6).

> b)      Court may not consider hearsay statements

With the exception of Augins's statements to SDI executives during the HR investigation, about which he and they gave deposition testimony, the Smithsons have not produced admissible evidence of alleged defamatory statements.  They claim it is "immaterial" that they have not deposed the individuals who reported the statements to them and that they must only "project a forecast of evidence to be used at trial" to defeat summary judgment. (Doc. No. 80: Resp. at 16-17).

The Fourth Circuit and North Carolina courts agree that hearsay evidence, which is inadmissible at trial, cannot be considered on a motion for summary

judgment. <u>Maryland Highways Contractors Ass'n, Inc. v. State of Md.</u>, 933 F.2d

1246, 1252 (4th Cir. 1991); <u>Strickland v. Doe</u>, 577 S.E.2d 124, 129 (N.C. Ct. App.

2003).  Here, even if the alleged statements of employees of SDI were considered

party admissions, the Smithsons rely on their own depositions and answers to

interrogatories to establish the truth of reports allegedly made to them by third

parties.  The record is devoid of depositions, affidavits, declarations, or other

satisfactory support pursuant to Federal Rule of Civil Procedure 56(c)(1) of those

third parties' statements.  Therefore, the Court will not consider Statements 2-10

above in deciding whether the Smithsons have shown a genuine dispute of fact for

their defamation claims.

      c)  Augins's statements do not amount to slander per se

  Augins admitted he told Blankenship or Mullinex that he did not know about

"Elizabeth Brown" and the PDL setup and that he did not remember what he talked

about with Williamson. (Doc. No. 71, Ex. C: Augins Dep. at 166, 168).  Augins also

admited relaying the findings of the HR investigation to Slovin. (<u>Id.</u> at 175, 177).

Blankenship testified that Mullinex asked Augins about Maria Smithson in

September when she had become more visible and another employee informed HR

about the situation. (Doc. No. 71, Ex. F: Blankenship Dep. at 80).  Augins responded

that he was aware that Maria Smithson was helping with a particular event, but

told Blankenship on September 24 that he did not know she was working as

Elizabeth Brown. (<u>Id.</u> at 81-82).  There is no admissible evidence in the record that

Augins used the terms "embezzlement" and "fraud" to describe the Smithsons'

arrangement with Dr. Agarwal.

Maria Smithson testified that Augins knew she was working for PDL, (Doc. No. 71, Ex. I: M. Smithson Dep. at 214), that he said she did not have to go through the waiver of conflict of interest policy, (Doc. No. 71, Ex. D: M. Smithson Dep. at 99), and that she assumed he knew her husband was reviewing and approving her invoices, although they had not discussed it. (Id. at 100, 230-31). Neither Smithson testified that Augins knew that Maria Smithson and Elizabeth Brown were one in the same; therefore, they have not shown a genuine issue of material fact regarding the falsity Augins's statement to HR.

Even if the statement were considered false, it does not establish slander per se because it does not "contain an imputation necessarily hurtful in its effect" on John or Maria Smithson's business. Market Am., Inc. v. Christman–Orth, 520 S.E.2d 570, 577 (N.C. Ct. App. 1999). Augins's disclaimer would only become defamatory when considered in conjunction with the company policy to "avoid conflicts of interest between personal and Sirona Group relationships," which could establish slander per quod discussed below. In the absence of proof in the record that Augins made a false statement that, on its face, impeached the Smithsons in their trade or accused them of a crime of moral turpitude, the Court will grant SDI and Augins summary judgment on the slander per se claim.

3.     Slander per quod claim (Smithsons' Count Two)

Slander per quod occurs when a statement that is not defamatory on its face, but reveals itself as harmful "in consequence of extrinsic, explanatory facts showing

its injurious effect." <u>Donovan v. Flumara</u>, 442 S.E.2d, 524, 574 (N.C. Ct. App. 1994) (quoting <u>Badme v. Lamke</u>, 89 S.E.2d 466, 467-68 (N.C. 1955)(internal quotation marks omitted). A per quod claim is only actionable when special damage, that is, pecuniary loss caused by the false statement is pleaded and proved. <u>Williams v. Rutherford Freight Lines, Inc.</u>, 179 S.E.2d 319, 322 (N.C. Ct. App. 1971). Here, the Smithsons claim Augins's statements above resulted in the loss of employment, (Doc. No. 41: Amend. Countercl. and Amend. Third Party Compl. at ¶ 78), valued at $250,000, given John Smithson's inability to obtain another similar job after his termination from SDI, (Doc. No. 80: Resp. at 20).

a)      no evidence of causation

Augins and SDI argue that the Smithsons have failed to show a genuine issue of material fact on the reason John Smithson was terminated. (Doc. No. 74: Mem. at 14; Doc. No. 83: Reply at 14). Blankenship testified her question involved Maria Smithson doing work as "Elizabeth Brown" creating a conflict of interest that was a problem for Blankenship and the company. (Doc. No. 75-2, Ex. 8: Blankenship Dep. at 82). John Smithson testified that Augins's statement was not the reason that he was fired and that he did not know the true reason. (Doc. No. 74-4, Ex. 3: Smithson Dep. at 152). Additionally, there is no proof in the record John Smithson would have retained his job if Augins had admitted he knew about the pseudonym arrangement with PDL. Thus, the record does not show that the alleged false statement caused pecuniary loss.

12

b)	qualified privilege

Because the alleged defamatory statements supported by the record are those made by Augins to HR executives during their investigation, SDI and Augins assert a qualified privilege shielding each from liability. (Doc. No. 71: Mem. at 17-18; Doc. No. 74: Mem. at 8-10).  North Carolina courts have held that statements made during investigations, including corporate investigations of employees, are privileged. Troxler v. Charter Mandala Center, Inc., 365 S.E.2d 665, 669 (N.C. Ct. App. 1988)(collecting cases).  Such statements must be made in good faith by a person with an interest or duty in the subject matter to a person having a corresponding interest or duty on a privileged occasion and in a manner and under circumstances fairly warranted by the occasion and duty or interest. Id. at 668. Here, Augins's statements documented in the record were made in response to inquiries by HR executives who were investigating the allegation by another employee against John Smithson.

The Smithsons initially alleged Augins made statements with actual malice, knowing their falsity, exhibiting ill-will toward the Smithsons based on their friendship with Augins's ex-wife and intending to prevent them from disclosing "potentially devastating financial information regarding SDI." (Doc. No. 41: Amend. Countercl. and Amend. Third Party Compl. at ¶ 76).

After discovery, however, the Smithsons have not produced admissible evidence that Augins knew the statements were false and that he acted with actual malice.  Maria Smithson admitted they had no "falling out" prior to John Smithson's

suspension and that Augins and his ex-wife remained "dear friends" through their divorce. (Doc. No. 75-1, Ex. 6: Maria Smithson Dep. at 252-53). The Smithsons have not put forward any admissible evidence of the financial information Augins was allegedly seeking to suppress. The Smithsons' belief that Augins "secretly harbored ill-will towards" them, (Doc. No. 80: Resp. at 19), is insufficient to create genuine issue of material fact regarding actual malice to defeat SDI's and Augins's claim of qualified privilege. Therefore, the Court will grant summary judgment in favor of SDI and Augins on the Smithsons' slander per quod claim.

4. Tortious interference claim (Smithsons' Count Three)

The Smithsons' tortious interference claim against Augins likewise fails for lack of proof of legal malice and for other reasons. They claim Augins induced SDI to fire John Smithson and induced PDL and SDI to no longer contract with Maria Smithson without justification and with intent to injure them. (Doc. No. 41: Amend. Countercl. and Amend. Third Party Compl. at ¶¶ 83, 84).

"In order to succeed on a claim for tortious interference with contract, a plaintiff must show:

(1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff.

Hopkins, 2017 WL 2380227 at *18 (quoting United Labs, Inc. v. Kuykendall, 3370 S.E.2d 375, 387 (N.C. 1988)).

Here after discovery, Maria Smithson has not shown she had a binding

contract with SDI or PDL.  For purposes of the instant motions, Dr. Agarwal's affidavit establishes that PDL was simply a pass through for John Smithson to employ Maria Smithson as Elizabeth Brown without interference from SDI.[1] (Doc. No. 79-2: Agarwal Aff. at 2).  Additionally, Blankenship testified that HR was aware of the situation and concerned about the conflict of interest of Maria Smithson working as Elizabeth Brown before Augins made any statements. (Doc. No. 75-2, Ex. 8: Blankenship Dep. at 76-78).  Thus, the Smithsons have not shown that Augins is responsible for inducing SDI to cease giving Maria Smithson work through the guise of PDL.

As to John Smithson, there is also no evidence that SDI would have continued to employ him had Augins admitted awareness of the PDL/Elizabeth Brown arrangement.  Additionally, because Augins enjoyed qualified immunity from liability for exercising his "non-outsider" authority as President of SDI, the Smithsons must show that he acted with legal malice, without any legal justification. <u>Block v. Paul Revere Life Ins. Co.</u>, 547 S.E.2d 51, 60 (N.C. Ct. App. 2001).  As detailed above, the Smithsons' initial allegations about Augins's malice are not supported by admissible evidence.  Therefore, the Court will grant summary judgment to Augins on the Smithsons' tortious interference claim.

B.      Smithsons' Motion for Summary Judgment (Doc. No. 76)

The Smithsons move for summary judgment on SDI's 18 causes of action

---

[1] The Smithsons have not challenged the veracity of Dr. Agarwal's description of the arrangement, but rather fault SDI for focusing attention on "irrelevant idiosyncrasies" in the methods and means PDL used to pay its subcontractors. (Doc. No. 84: Reply at 5).

against them. Many of SDI's claims require a showing of actual damages. The Smithsons assert SDI has not shown any evidence of a measurable difference between the value of those services promised by PDL and those actually received from PDL. (Doc. No. 76-1: Mem. at 11-12). In response, SDI presents evidence from SDI employees that the company never would have approved the arrangement whereby John Smithson negotiated rates and approved Maria Smithson invoices submitted under the letterhead of a preferred vendor, (Doc. No. 79-3, Ex. K: Susan Murphy Decl. at 2), and that the work outsourced to her by John Smithson could have been accomplished in house, (Doc. No. 78-11, Ex. J: Craig Bellot at 2; Doc. No. 78-14, Ex. M: Meggan Polich Decl. at 2-3). Accordingly, SDI argues that the $349,500 approved by John Smithson for payment to PDL for work performed by Maria Smithson/Elizabeth Brown, less the amount she paid subcontractors, are actual damages. (Doc. No. 79-3, Ex. K: Susan Murphy Decl. at 1-2; Doc. No. 78: Resp. at 8). SDI also points to the reduced cost of invoices of subcontractors used by Maria Smithson to perform work for SDI as a measure of the true value of the benefit the company received because Maria Smithson billed at higher rates for the same projects. (Doc. No. 78-8, Ex. G: Invoices of Stephanie Horgan). Therefore, the Court finds that a triable issue of fact regarding actual damages exists for each claim requiring it.

   1. Fraud claim (SDI's Count One)

  SDI alleges the Smithsons made representations intended to deceive SDI by Maria Smithson submitting invoices as Elizabeth Brown on PDL letterhead for

approval by John Smithson.  This arrangement avoided review by his superiors

because the invoices were kept within the amount he could approve on his own

authority, which caused SDI to reasonably rely and act on them by processing

payment to PDL. (Doc. No. 22: Amend. Compl. at 20-22).  The Smithsons assert

there is no genuine issue of material fact on damages. (Doc. No. 76-1: Mem. at 10).

In fraud cases, North Carolina courts seek to put a plaintiff in the same position as

if the fraud had not been committed and avoid allowing a defendant to benefit from

fraud. <u>Tradewinds Airlines, Inc. v. C-S Aviation Services</u>, 733 S.E.2d 162, 169 (N.C.

Ct. App. 2012).  As detailed above, SDI has shown sufficient facts of measurable

damages to defeat summary judgment on its fraud claim.

> 2.     Negligent misrepresentation claim (SDI's Count Two)

SDI claims the Smithsons owed it a duty of care not to conceal or

misrepresent facts relating to the invoices Maria Smithson submitted and John

Smithson approved, resulting in payments that would not have been made had the

company known the true facts. (Doc. No. 22:  Amend. Compl. at 22-23).  The

Smithsons claim that SDI has failed to show they owed a duty independent of mere

contractual duty and that SDI has failed to show pecuniary loss. (Doc. No. 76-1:

Mem. at 15).

In North Carolina, a person who supplies false information in a business

transaction in which he has a pecuniary interest is liable for the pecuniary loss to

the other party who justifiably relies on the information. <u>Kindred of N.C., Inc. v.

Bond</u>, 584 S.E.2d 846, 853 (N.C. Ct. App. 2003).  Here, Dr. Agarwal's affidavit tends

to show that the use of PDL's letterhead, its bank account, and the pseudonym Elizabeth Brown comprised a ruse to allow John Smithson to employ Maria Smithson without interference by SDI. SDI relied on John Smithson's approval of her invoices to process payments that it would not have allowed had it known the truth about the arrangement. Accordingly, SDI has put forth sufficient facts for a jury to find the Smithsons provided false information in transactions in which they had a pecuniary interest.

3.      Unfair and Deceptive Trade Practice claim (SDI's Count Three)

SDI alleges that the Smithsons' conduct amounted to unfair or deceptive acts or practices in or affecting commerce, in violation of N.C. Gen. Stat. § 75-16.1. (Doc. No. 22: Amend. Compl. at 25). The Smithsons counter that SDI did not suffer injury and that the alleged fraudulent acts of John Smithson occurred entirely within his employment with SDI; therefore, such conduct was not "in or affecting commerce." (Doc. No. 76-1: Mem. at 17).

The North Carolina Supreme Court found the UDTPA applicable where an employee engaged in self-dealing by selling computer parts and services to his employer from companies owned by him without informing his employer about his interest in payments to the companies. <u>Sara Lee Corp. v. Carter</u>, 519 S.E.2d 308, 311-12 (N.C. 1999). Here, Dr. Agarwal's affidavit shows that John Smithson set up the arrangement to approve SDI payments to his wife through PDL in which he had an undisclosed financial interest. Thus, SDI has presented sufficient facts to show his conduct was "in or affecting commerce" to defeat summary judgment on its

UDTPA claim.

4.    Obtaining property by false pretenses (SDI's Count Four)

SDI alleges that the Smithsons cheated and defrauded it out of funds by Maria Smithson submitting invoices as Elizabeth Brown on PDL letterhead and John Smithson approving them. (Doc. No. 22: Amend. Compl. at ¶¶ 116, 117).  It does not appear that the Smithsons particularly addressed this claim in their Mem. in support of summary judgment. (Doc. No. 76-1). As detailed above, Dr. Agarwal's affidavit presents facts showing that the Smithsons used the PDL/Elizabeth Brown ruse to obtain payments from SDI without it knowing John Smithson was assigning work to and approving invoices submitted by his wife, Maria Smithson.  Therefore, this claim will proceed to jury determination.

5.    Conversion—misappropriated funds (SDI's Count Five)

SDI claims that it did not authorize the Smithsons to assume and exercise the right of ownership over funds received by them through the PDL/Elizabeth Brown arrangement. (Doc. No. 22: Amend. Compl. at ¶ 26).  It does not appear that the Smithsons particularly addressed this claim in their Mem. in support of summary judgment. (Doc. No. 76-1).  "There are, in effect, two essential elements of a conversion claim: ownership in the plaintiff and wrongful possession or conversion by the defendant." Variety Wholesalers, Inc. v. Salem Logistics Traffic Services, LLC, 723 S.E.2d 744, 747 (N.C. 2012).  SDI has presented evidence that it would not have approved the payments to PDL for marketing services if it had known about the arrangement whereby John Smithson negotiated Maria Smithson's rates and

approved her invoices.  Therefore, a jury should determine whether the Smithsons'

control over those funds was without the authorization of SDI.

   6. Unjust enrichment (SDI's Count Six)

 SDI charges that the Smithsons inequitably accepted the benefit of funds

paid to PDL for Elizabeth Brown invoices. (Doc. No. 22: Amend. Compl. at ¶¶ 134,

136).  The Smithsons counter that because all payments went first to PDL, they did

not "consciously" accept a measurable benefit "directly" from SDI. (Doc. No. 76-1:

Mem. at 21).

 "A party must prove three elements to establish a claim for unjust

enrichment: 'that it conferred a benefit on another party, that the other party

consciously accepted the benefit, and that the benefit was not conferred gratuitously

or by an interference in the affairs of the other party.'" New Prime, Inc. v. Harris

Transport Co., 729 S.E.2d 732, at *2 (N.C. Ct. App. 2012)(table) (quoting

Southeastern Shelter Corp. v. BTU, Inc., 154 N.C. App. 321, 330, 572 S.E.2d 200,

206 (2002)).  The North Carolina Court of Appeals has recognized that such a

benefit may be unjustly received by a defendant through a third party. Id.

(collecting cases and citing Restatement (Third) of Restitution and Unjust

Enrichment § 48 (2011)).

 Here, Dr. Agarwal's affidavit is evidence that all the money paid by SDI on

invoices submitted by Maria Smithson/Elizabeth Brown passed through PDL's bank

account, and later his dental practice practice bank account, to her.  Therefore, SDI

has shown a genuine issue of material fact that the Smithsons unjustly received

payments from SDI through PDL as a result of the arrangement with Dr. Agarwal.

7.     Civil conspiracy (SDI's Count Seven)

SDI alleges that the Smithsons conducted a scheme to generate additional income for themselves through Maria Smithson's submission of invoices on PDL letterhead as Elizabeth Brown, which John Smithson would approve and SDI would unknowingly remit payment. (Doc. No. 22: Amend. Compl. at ¶ 140).  The Smithsons contend there is no separate cause of action of civil conspiracy in North Carolina.  (Doc. No. 76-1: Mem. at 24).  "In a civil conspiracy, 'recovery must be on the basis of sufficiently alleged wrongful overt acts,' and the conspiracy charge is simply a mechanism for associating the defendants and broadening the admissible evidence." Plasman v. Decca Furniture, Inc., 12 CVS 2832, 2016 WL 6208639 at *11 (N.C. Bus. Ct. Oct. 21, 2016) (quoting Dove v. Harvey, 608 S.E.2d 798, 800 (N.C. Ct. App. 2005)).  As detailed above, SDI has presented sufficient evidence of the Smithsons' agreement to commit fraudulent acts to withstand dismissal of the conspiracy charge at this stage in the proceedings.

8.     Embezzlement (SDI's Count Eight)

SDI alleges that John Smithson willfully converted company funds to his own use by establishing a vendor relationship with his wife and approving her Elizabeth Brown invoices for payment, where the amount paid was less than the value received and SDI would not have permitted the arrangement if it had be disclosed, in violation of N.C. Gen. Stat. 14-90. (Doc. No. 22: Amend. Compl. at ¶¶ 146-50). The Smithsons argue that embezzlement, an offense under criminal law, is not a

civil cause of action in North Carolina. (Doc. No. 76-1: Mem. at 22).

A person who commits an act that is punishable under enumerated criminal statutes, including embezzlement, is liable for civil damages to the owner of the property. N.C. Gen. Stat. 1-538.2(a); <u>Plasman</u>, 2016 WL 6208639 at *11 n.10. "The essential elements of embezzlement are:

> (1) the defendant, older than 16, acted as an agent or fiduciary for his principal, (2) he received money or valuable property of his principal in the course of his employment and through his fiduciary relationship, and (3) he fraudulently or knowingly and willfully misapplied or converted to his own use the money of his principal which he had received in a fiduciary capacity."

<u>State v. Lassiter</u>, 796 S.E.2d 401 (N.C. Ct. App. 2017)(table)(quoting <u>State v. Britt</u>, 360 S.E.2d 291, 292 (1987)). In the <u>Lassiter</u> case, an office manager misapplied company funds for unauthorized purchases.

Here, SDI has presented evidence from which a jury could find that John Smithson had authority to approve invoices under a certain dollar amount as SDI's agent, but misapplied SDI's funds in approving invoices he knew were submitted by his wife as Elizabeth Brown. In turn, a jury could conclude he fraudulently received those funds when they passed through PDL's bank account to Maria Smithson. Therefore, the Court will not grant the Smithsons summary judgment on SDI's embezzlement claim.

9.    Conversion—SDI websites (SDI's Count Nine)

SDI alleges John Smithson came into wrongful possession of its websites without its authorization. (Doc. No. 22: Amend. Compl. at ¶¶ 154-55). In responding to SDI's injunctive relief claim, John Smithson "asserted and is

asserting no ownership interest in the Sirona websites," yet, in responding to this conversion claim, he claims his ownership interest in 3Dsummit.com such that he could not possibly have converted it. (Doc. No. 76-1: Mem. at 22, 24).  Although he states that "[a]t all times, SDI maintained control over the Sirona Websites," (Id. at 23), he admitted in his deposition that he changed the password for 3Dsummit.com after his termination. (Doc. No. 76-5, Ex. D: J. Smithson Dep. at 154-56). Information Technology Manager Christopher Law stated John Smithson registered websites used by SDI in his own name and continued to access them after his termination, ultimately changing the password and taking down3Dsummit.com twice on December 11, 2014, to the exclusion SDI until the Temporary Restraining Order was issued on December 24, 2014. (Doc. No. 3-3, Ex. 1: Law Decl. at 3-4; Doc. No. 8: TRO).  Therefore, there is sufficient evidence of John Smithson's conversion of SDI websites to defeat summary judgment.

10.     Breach of contract—patent and secrecy agreement (SDI's Count Ten)

SDI claims it suffered damages from John Smithson's retaining control over the websites in violation of the Employee Patent and Secrecy Agreement providing that all intellectual property created during his employment belonged to the company. (Doc. No. 22: Amend. Compl. at ¶¶ 160, 162, 163).  Again, John Smithson asserts that SDI had control over the websites at all times and that he only changed "the website contact" around December 10, 2014, because of his concern that someone had accessed his personal email account. (Doc. No. 76-1: Mem. at 25). Accordingly, he argues that any breach of the agreement was not material. (Id.).

SDI counters that John Smithson's refusal to relinquish access to the website that was critical to its business defeated the very purpose of the agreement. (Doc. No. 78: Resp. at 23). Therefore, a jury question is remains on the issue of materiality.

11. Declaratory judgment (SDI's Count Eleven)

This claim was addressed above and will be resolved in SDI's favor.

12. Computer trespass (SDI's Count Twelve)

SDI alleges that John Smithson unlawfully retained the company's laptop and deleted all its data, in violation of N.C. Gen. Stat. § 14-458. (Doc. No. 22: Amend. Compl. at ¶ 169). As with the embezzlement claim, John Smithson asserts there is no civil cause of action for violating the criminal statute on computer trespass. (Doc. No. 76-1: Mem. at 22).

North Carolina General Statute § 1-539.2A provides for recovery of damages and the costs of suit for violations of § 14-458, which prohibits erasing computer data without authorization and making an unauthorized copy of computer data. Here, Human Resources Manager Kevin Mullinix stated that John Smithson refused to return the company's laptop on September 29, 2014, and that when the computer was returned the next day, all of its data was deleted. (Doc. No. 78-13, Ex. L: Mullinix Decl. at 2). John Smithson admitted deleting the data by mistake and copying the contents of the laptop onto drive, although the company had not authorized him to do so. (Doc. No. 79-1, Ex. D: J. Smithson Dep. at 216). Therefore, SDI has produced sufficient evidence to defeat summary judgment on its computer trespass claim.

13. Conversion—laptop (SDI's Count Thirteen)

SDI alleges that John Smithson's retention of the laptop and its contents amounted to conversion. (Doc. No. 22: Amend. Compl. at ¶¶ 173, 175). John Smithson asserts that SDI allowed him to retain the laptop pending backing up information on a drive. (Doc. No. 76-1: Mem. at 23). He returned the laptop the day after his termination and the backup drive on October 14, 2014. (Id.). SDI counters that there is a genuine issue of fact over whether John Smithson refused to return the laptop, (Doc. No. 78-13, Ex. L: Mullinix Decl. at 2), and that its subsequent return does not negate the initial act of conversion, (Doc. No. 78: Resp. at 19). Accordingly, SDI has produced sufficient evidence to defeat summary judgment on its conversion of the laptop claim.

14. Trespass to chattel—laptop (SDI's Count Fourteen)

Similar to its claims about the websites, SDI alleges John Smithson was not authorized to exercise control over the laptop following his termination. (Doc. No. 22: Amend. Compl. at ¶ 180). As detailed above, John Smithson claims he was allowed to retain the laptop and Kevin Mullinix claims he refused to return it when requested on September 29, 2014. Accordingly, there is a genuine issue of material fact regarding the trespass to chattel count.

15. Injunctive relief—websites (SDI's Count Fifteen)

SDI seeks injunctive relief prohibiting John Smithson from further controlling, accessing, or altering its websites. (Doc. No. 22: Amend. Compl. at ¶ 186). John Smithson states the issue is moot since he has relinquished control of

the websites, (Doc. No. 76-1: Mem. at 22), but SDI requests judicial protection from future incursions, (Doc. No. 78 at 25). As with the related request for declaratory judgment, this claim for injunctive relief will be resolved in SDI's favor.

16. Injunctive relief—confidential information (SDI's Count Sixteen)

SDI seeks injunctive relief to restrain John Smithson from publically disclosing confidential and proprietary information, including in a pleading that contains allegations about SDI. (Doc. No. 22 at ¶ 188). John Smithson states the issue is moot because he no longer has control of the laptop. Because John Smithson made a copy of the laptop and has knowledge of SDI's confidential and proprietary information, it does not appear that this issue is moot. Thus, this claim for injunctive relief will be resolved in SDI's favor.

17. Breach of fiduciary duty (SDI's Count Seventeen)

SDI alleges John Smithson had fiduciary authority to act on its behalf in his position of Director of Marketing Extraoral Imaging to approve vendor invoices up to threshold amounts, to manage vendor activities, to allocate work between vendors and his subordinates, to use and store information on its laptop, to manage its websites, and to utilize confidential information in performance of his duties, which SDI trusted him to complete for its benefit and not his own. (Doc. No. 22: Amend. Compl. at ¶ 193-98). Smithson counters that his employment did not create a fiduciary relationship because SDI managers provided oversight for his decisions and that SDI did not suffer any injury from his actions. (Doc. No. 76-1: Mem. at 19-20). SDI points to the particular facts of this case showing that invoices submitted

by Maria Smithson/Elizabeth Brown remained under the threshold at which SDI entrusted John Smithson to approve without supervisory review. (Doc. No. 78: Resp. at 14).

As in <u>Sara Lee Corp.</u>, 351 N.C. 519 S.E.2d at 314, it would be a "fraudulent abuse of his fiduciary relationship with his employer" for John Smithson to exercise that authority in undisclosed self-dealing. SDI has presented sufficient evidence that the PDL/Elizabeth Brown arrangement was carried on for the benefit of the Smithsons to the unknowing detriment of SDI to defeat summary judgment on the claim of breach of fiduciary duty.

18. Misappropriation of trade secrets (SDI's Count Eighteen)

SDI alleges that John Smithson's retention of the laptop, then copying and deleting its contents, which included confidential and trade secret information, amounted to misappropriation of that information. (Doc. No. 22: Amend. Compl. at ¶¶ 201-207). John Smithson asserts that SDI has failed to particularly identify the information at issue and that any such information was returned when he turned over the backup drive. (Doc. No. 76-1: Mem. at 27-28). While it is possible that John Smithson retained his own copy of information from the laptop, there is no evidence that he did so. Therefore, summary judgment in favor of John Smithson is appropriate. Any future use of such information would be prohibited by the injunctive relief addressed above.

19. Statute of limitations

The Smithsons assert that all of SDI's claims except fraud are subject to a

three-year statute of limitations; therefore, no conduct before December 22, 2011, is at issue. (Doc. No. 76-1: Mem. at 28).   SDI responds that all claims were filed within the statute of limitations because Counts Nine through Sixteen and Eighteen, dealing with the laptop and websites, were filed within months of the underlying conduct; Counts Two through Four, Eight, and Seventeen were filed within months of their discovery by SDI; and the statute of limitations for the remaining counts is tolled by the continuing wrong doctrine, that is they were part of a scheme which restarted the clock with each unlawful act. (Doc. No. 78: Resp. at 23-24).  Accordingly, the statute of limitations is not a barrier to SDI's causes of action at this stage of the proceedings.

IV.     CONCLUSION

Upon consideration of the evidence presented by the parties following discovery, **IT IS HEREBY ORDERED** that

1.      SDI's and Augins's Motions for Summary Judgment, (Doc. Nos. 70, 73), are **GRANTED** and all of the claims in the Smithsons' Amended Counterclaim and Amended Third Party Complaint, (Doc. No. 41), are **DISMISSED**;

2.      The Smithsons' Motion for Summary Judgment, (Doc. No. 76), is **GRANTED in part** as to SDI's misappropriation of trade secrets claim, (Doc. No. 22: Amend. Compl., Count Eighteen), which is **DISMISSED**, and **DENIED in part** as to all other claims by SDI, which may proceed to jury trial to be scheduled by separate order; and

3.     SDI shall submit proposed orders on the declaratory and injunctive relief granted herein as to Counts Eleven, Fifteen, and Sixteen in its Amended Complaint, (Doc. No. 22).

Signed: March 30, 2018

Robert J. Conrad, Jr.
United States District Judge